IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CHARLES ANDERSON,**

 **Plaintiff,**

**v.**

**HOLTEN MEAT, INC,**

 **Defendant.**              **Case No.09-cv-620-DRH**

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. Introduction

This matter comes before the Court on plaintiff Charles Anderson's Motion to Remand (Doc. 11) and supporting memorandum (Doc. 12), to which defendant Holten Meat, Inc., has filed its opposing Response (Doc. 15) and Plaintiff has thereafter replied (Doc. 17). Plaintiff brings this suit against Defendant, his former employer, alleging that Defendant terminated him in retaliation for exercising his rights under the Illinois Workers' Compensation Act after he was injured on the job, which is in violation of public policy (Doc. 2, Ex. 1 - Complaint). Plaintiff originally filed his Complaint in the Circuit Court of St. Clair County, Illinois. Defendants timely removed this matter (Doc. 2) on the basis of federal question jurisdiction, **28 U.S.C. § 1331**, asserting that Plaintiff's claim is specifically preempted § 301 of the Labor Management Relations Act ("LMRA"), **29 U.S.C. § 185**,

as its resolution would require the Court to interpret certain provisions of the Collective Bargaining Agreement ("CBA") made between Defendant and the United Food & Commercial Workers Union Local #655.

As discussed herein, because the Court finds that Plaintiff's retaliatory discharge claim does not require interpretation of the CBA, the case should be remanded.

## II. Discussion

### A. Legal Standard

#### 1. Removal

The removal statute, **28 U.S.C. § 1441**, is construed narrowly, and doubts concerning removal are resolved in favor of remand. ***Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)**. The removing party bears the burden of presenting evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. ***See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997)**. "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" ***Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (citations omitted)**. However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**.

**2.     Section 301 Preemption**

Under the "well-pleaded complaint rule," it must be evident from the face of a properly pleaded complaint that a federal question is at issue; only this will give rise to federal-question jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987) (a case may not be removed to federal court merely when a federal defense to a plaintiff's claims exists). However, although a plaintiff is considered the "master of the claim," the law will not allow a plaintiff to "artfully plead[] . . . a federal claim solely in terms of state law," in an attempt to avoid federal jurisdiction. *See id., see also Tifft v. Commonwealth Edison Co.*, 366 F.3d 513, 516 (7th Cir. 2004) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983)). The one exception or "'independent corollary'" to the well-pleaded complaint rule, therefore, is known as the "'complete preemption doctrine.'" *Caterpillar*, 482 U.S. at 393 (quoting *Franchise Tax Bd.*, 463 U.S. at 22). When "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim,'" complete preemption occurs. *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Thus, once a particular area of state law becomes completely preempted, any claim brought pursuant to that state law will instead be considered a federal claim arising under federal law. *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 24 ("'[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action

**necessarily 'arises under' federal law'")**.

Recognizing the importance of uniformity in labor law, § 301 of the LMRA provides federal jurisdiction for all "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." *See* **29 U.S.C. § 185(a);** *see also Lingle v. Norge Div. of Magic Chef, Inc.*, **486 U.S. 399, 403 (1988);** *Caterpillar*, **482 U.S. at 393-94 (citing** *Avco Corp. v. Machinists*, **376 F.2d 337 (6th Cir. 1967),** *aff'd*, **390 U.S. 557, 558 (1968)(" when '[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement, that complaint arises under federal law . . .'")(alterations in original))**. In turn, courts have interpreted § 301 as means of providing federal-court jurisdiction over suits involving collective-bargaining agreements." *Lingle*, **486 U.S. at 403 (citing** *Textile Workers v. Lincoln Mills*, **353 U.S. 448, 451 (1957))**. Concurrent jurisdiction over § 301 claims lies with state courts, but federal law must be applied no matter the forum. *Id.* **at 403, n.2**.

A § 301 claim may be brought when the issues deal directly with "rights created by collective-bargaining agreements" or when the issues are "'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, **482 U.S. at 394 (quoting** *Electrical Workers v. Hechler*, **481 U.S. 851, 859, n.3 (1987))**. Given the doctrine of complete preemption, any state claim also dealing with the aforementioned issues will be completely preempted by § 301 of the LMRA. *See* *Tifft*, **366 F.3d at 516 (citing** *Allis-Chalmers Corp. v. Lueck*, **471 U.S., 202,**

**220 (1985))**. Yet, if a state law claim merely *references* a collective-bargaining agreement, but does not require the Court to analyze its provisions to resolve the underlying issues of the state law claim, § 301 preemption will likely not apply. ***Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 117-18 (1994))**. In this case, Defendant contends Plaintiff's Complaint is completely preempted by § 301.

**B.     Analysis**

Even though Plaintiff has brought his claim pursuant to the Illinois Workers' Compensation Act, **820 ILL. COMP. STAT. 305/4(h)**, removal of this action will be deemed appropriate if the Court determines Plaintiff's claim requires an interpretation of the CBA. In turn, if the Court determines Defendant has not met its burden of showing that analyzing provisions of the CBA is a necessary step in resolving Plaintiff's claim, then § 301 preemption will not apply and this case must be remanded for lack of subject matter jurisdiction.

Plaintiff alleges that he began working for Defendant on February 2, 2009 and was injured on the job on February 25, 2009. The following Monday, on March 2, 2009, when Plaintiff arrived at work he was informed that he had been terminated. First, Plaintiff argues that because he was still within the 60-day probationary period under the CBA, he was not subject to its terms and conditions and therefore, its provisions need not be interpreted to decide his retaliatory discharge claim against Defendant. Responding, Defendant argues that regardless of whether Plaintiff was still within the probationary period at the time of his

termination, he was subject to the CBA, including its dispute resolution procedure. Further, Defendant asserts that because the CBA offers remedies (which culminate in arbitration) for Plaintiff's claim of retaliatory discharge relating to the Illinois Workers' Compensation Act, Plaintiff's claim is preempted. Defendant additionally believes that Plaintiff's state law retaliatory discharge claim is waived by the CBA's own grievance procedure for such claims. Replying, Plaintiff reasserts his grounds that as a probationary employee, he is not subject to the provisions of the CBA, including its dispute resolution procedures. Secondly, Plaintiff points out that his state law claim for retaliatory discharge does not require interpretation of the CBA and therefore, is not preempted. Lastly, Plaintiff reiterates his argument that should he be subject to the CBA's dispute resolution procedures, which require arbitration of such claims, the CBA would be in violation of Illinois law because it would offer incomplete relief to Defendant's employees.

The provision regarding the probationary term for employees can be found in Article 2.4 of the CBA, which reads in pertinent part:

> 2.4 New employees shall be on probation for their first sixty (60) days of employment during which time they may be terminated for any reason . . . . Such termination shall not be subject to Article 4.

(Doc. 15, Ex. A, p. 3.)

In turn, Article 4 of the CBA deals with Seniority status and rights of the employees (Doc. 12, p. 2, n.1). Plaintiff submits the reference to Article 4 contained in Article 2.4 of the CBA is a typographical error and that it should instead refer to

Article 5, which deals with Dispute Procedures (*Id*.).  Plaintiff explains that Article 4 mandates that no employee shall be entitled to seniority status unless employed for six months.  Therefore, Plaintiff reasons that Article 4 could never apply to a probationary employee terminated within the first 60 days of employment (*Id*.).  Rather, Plaintiff argues that it makes more sense for Article 2.4 to reference Article 5 and as such, concludes that the language of the CBA renders its dispute resolution procedures inapplicable to probationary employees, such as Plaintiff (*Id*.).  Defendant does not directly respond to Plaintiff's argument regarding whether reference to "Article 4" in Article 2.4 was a typographical error, but maintains that whether or not Plaintiff was a probationary employee, he remained subject to the terms of the CBA, including the dispute resolution procedures set forth in Article 5 of the CBA (Doc. 15, pp. 2-3).  Article 5 of the CBA reads as follows:

ARTICLE 5 DISPUTE PROCEDURE

5.1  Should any differences, disputes including safety disputes, or complaints arise over the interpretation or application of the contents of this Agreement including claims of discrimination by any employee against the Employer relating to sex, race, religion, age, national origin, handicap, union activity, the family medical leave act and alleged retaliation relating to any workers' compensation act, there shall be an earnest effort on the part of both parties to settle such promptly through the following steps:

Step 1.  By conference between the employee involved together with the stewards and a supervisor.

Step 2.  By conference between the business agent and a supervisor.

Step 3.  By conference between an official or officials of the Union and a representative of the Employer.

>    Step 4.   In the event that the last step fails to settle satisfactorily the complaint, it shall be referred to arbitration.
>
>    5.2  In any case in which an employee is aggrieved and the Union promptly notifies the employee that it does not intend to request arbitration after the Step 3 meeting, the time for requesting arbitration shall be stayed pending the employee's exhaustion of internal union appeals to the Union's Executive Board.
>
>    5.3  The parties shall request the Director of the Federal Mediation and Conciliation Service to furnish a panel of seven (7) arbitrators from which the arbitrator may be chosen.  The expense of the arbitrator shall be paid for jointly.
>
>    5.4  In the event of alleged unfair discharge, the Union must file a written complaint with the Employer within seven (7) days after the day of discharge, asserting that the discharge was improper.  Should the arbitrator determine that it was an unfair discharge, the Employer shall reinstate the employee in accordance with the findings of the arbitrator, which shall be final and binding.
>
>    5.5  Grievances must be taken up promptly, and no grievance will be considered, discussed or become arbitrable which is presented later than ten (10) calendar days after such has happened.

(Doc. 15, Ex. A, pp. 4-5.)

Regardless of the Parties' arguments as to whether the CBA's dispute resolution applies to Plaintiff who was still a "probationary employee" when he was terminated, the Court finds interpretation of the CBA unnecessary for resolving Plaintiff's state law retaliatory discharge claim.  The Court's view is shaped by the United States Supreme Court's opinion in ***Lingle v. Norge Division of Magic Chef, Inc.***  The plaintiff in ***Lingle*** claimed she was terminated by her employer in retaliation for filing a workers' compensation claim, which her employer believed to be false.  **486 U.S. at 401-02**.  The ***Lingle*** plaintiff thereafter brought a claim

against her employer in state court for retaliatory discharge pursuant to the Illinois Workers' Compensation Act. ***Id.*** Her employer removed the case to federal court on the basis that the plaintiff's claim was preempted by § 301. ***Id.* at 402**. The employer further requested either a dismissal or a stay of proceedings, arguing that the applicable collective-bargaining agreement required arbitration of the plaintiff's claim. ***Id.*** Reversing the appellate court decision which affirmed the decision of the district court, the Supreme Court found that the plaintiff's claims were not preempted by § 301. ***Id.* at 413**.

The ***Lingle*** court looked at the elements of a claim for retaliatory discharge under Illinois law, finding that a plaintiff must show (1) he or she was terminated from employment or threatened with termination, and (2) the employer's motive for terminating or threatening to terminate was in order to prevent the employee from exercising rights established by the Illinois Workers' Compensation Act or to interfere with those rights. ***Id.* at 406-07**. Resolution of such a claim would involve "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." ***Id.* at 407**. The plaintiff's employer, in its defense, need only show that it had a nonretaliatory reason for terminating the employee, which again would amount to a "purely factual inquiry." ***Id.*** The Supreme Court thereby concluded that "the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 preemption purposes: resolution of the state-law claim does

not require construing the collective-bargaining agreement." **Id.** Therefore, even though the same facts may be addressed during state proceedings as during dispute resolution proceedings, if a state law claim can be resolved without interpretation of a collective-bargaining agreement, the claim is considered "independent" of the agreement for the purposes of § 301 preemption. **Id. at 410-11 (noting that "there is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements")**.

The Court finds the instant case to be analogous to *Lingle*. Plaintiff brings a state law retaliatory discharge claim for exercising his rights under the Illinois Workers' Compensation Act. Resolving Plaintiff's claim will involve only factual inquiries – no interpretation of the various provisions of the CBA is needed. In other words, the questions of whether Plaintiff was still a probationary employee and whether the dispute resolution procedures set forth in Article 5 of the CBA applied to him are nonissues. *Lingle* makes it clear that a plaintiff can be subject to the dispute resolution procedures of a collective-bargaining agreement and still bring a state law claim that is independent of the agreement, if a court will not require interpretation of the agreement's provisions in order to resolve the claim.

As the removing Party, Defendant has not met its burden of showing that any provision of the CBA needs to be interpreted in order to resolve Plaintiff's claim. Defendant merely argues that the CBA's dispute resolution procedures apply to Plaintiff. This argument, however, does little to show that an interpretation of any

portion of the CBA is necessary to resolve Plaintiff's claim. Defendant additionally argues that Plaintiff's independent state law retaliatory discharge claim is waived by the CBA (Doc. 15, pp. 4-5). According to Defendant, pursuant to ***Lingle***, a collective-bargaining agreement can waive an employee's independent state law rights and thus make dispute resolution the only recourse if the provisions doing such are "clear and unmistakable" (Doc. 15, p. 4). Defendant asserts that the language in the CBA meets this "clear and unmistakable" standard.

Contrary to Defendant's assertions, the Court finds nothing in the cited provisions of the CBA, specifically, Article 5, that clearly and unmistakably waives Plaintiff's claim for retaliatory discharge. At the most, it provides a means for resolution in the alternative to filing suit. However, it does clearly and unmistakably indicate that the dispute resolution procedures in Article 5 shall be the only means of resolving an employee's claim, to the exclusion of any state law rights and/or remedies.[1] Thus, the Court finds Defendant's waiver argument to be unavailing as well. In short, there is nothing to convince the Court that Plaintiff's claim is preempted by § 301 and as such, federal question jurisdiction does not exist.

---

[1] The Court is not making a finding that such language would, in fact, waive an employee's state law rights, and if so, whether such waiver would be legal. Instead, the Court is merely suggesting an exemplar of waiver language.

### III. Conclusion

Defendant has failed to meet its burden of proof that federal question jurisdiction under **28 U.S.C. § 1331** exists to remove this case, as the Court concludes an analysis of the CBA unnecessary to resolve Plaintiff's claim for retaliatory discharge under the Illinois Workers' Compensation Act. Instead, it appears, at least from the Parties' briefings of the issues, that Plaintiff's claim can be resolved via applicable state law and thus, there is no § 301 preemption. Therefore, Plaintiff's Motion to Remand (Doc. 11) is **GRANTED**. Accordingly, the Clerk is instructed to **REMAND** this case back to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, pursuant to **28 U.S.C. § 1447(c)**, and close the case file. Further, because the Court finds that the application of the complete preemption doctrine in this case was complex and somewhat uncertain, the Court will refrain from awarding attorneys' fees or costs to Plaintiff.

**IT IS SO ORDERED.**

Signed this 8th day of December, 2009.

/s/  David R Herndon
**Chief Judge
United States District Court**